IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| VERONICA SANDOVAL, | ) | Case No. _____ |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **COMPLAINT, JURY DEMAND,** |
| | ) | **AND REQUEST FOR PLACE OF** |
| JOHN PEDEN, in his individual and | ) | **TRIAL** |
| official capacities, | ) | |
| | ) | |
| MARK MONTGOMERY, in his | ) | |
| individual and official capacities, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| THE CITY OF COZAD, a Nebraska | ) | |
| Political Subdivision, | ) | |
| | ) | |
| Defendants. | ) | |

COMES NOW the Plaintiff, Veronica Sandoval, by and through her counsel of record, and for her causes of action against Defendants, states as follows:

**JURISDICTION, VENUE, AND PARTIES**

1.      This Court has jurisdiction pursuant to the provisions of 28 U.S.C. §§ 1331, 42 U.S.C. §1983, and 42 U.S.C. § 1988.

2.      Venue for this action is proper in the United States District Court for the District of Nebraska because the acts and omissions complained of herein occurred in the District of Nebraska.

3.      Plaintiff Veronica Sandoval ("Sandoval") is a resident of Lincoln, Lancaster County, Nebraska.

1

4.      Defendant John Peden ("Peden") was at all times relevant to this case employed as a law enforcement officer with the City of Cozad, Nebraska Police Department. Defendant Peden is being sued in both his individual and official capacities. The actions and inactions alleged in this Complaint against Defendant Peden were done under color of state law.

5.      Defendant Mark Montgomery ("Montgomery") was at all times relevant to this case employed as a law enforcement officer with the City of Cozad, Nebraska Police Department. Defendant Montgomery is being sued in both his individual and official capacities. The actions and inactions alleged in this Complaint against Defendant Montgomery were done under color of state law.

6.      Defendant the City of Cozad, Nebraska ("the City") is a Political Subdivision within the State of Nebraska.

## FACTUAL BACKGROUND

### *The City and Defendant Montgomery's Notice of*
### *Defendant Peden's Threat to the Public*

7.      In or about August of 2020, members of the Cozad Police Department approached Defendant Montgomery to "advise that they had no confidence in [Defendant Peden]"; and that "they were afraid that his decision making was going to get them in trouble." Several officers informed Defendant Montgomery that Defendant Peden had "advised them to arrest individuals when it was not warranted to arrest them." One officer stated that he was "more afraid of working with [Defendant Peden] than working with the criminals." The officers went on to state

2

that Defendant Peden's behavior had become more erratic over the last few years. Some officers even threatened to resign unless Defendant Montgomery took action against Defendant Peden.

8.      Upon review of Defendant Peden's employment file, Defendant Peden had the highest rate of taser usage of any officer employed by the City of Cozad against human subjects clearly evidencing the City and Defendant Montgomery's knowledge of Defendant Peden's willingness to violate the rights of individuals in the Cozad community.

9.      At all relevant times pertinent to this lawsuit, Defendant Montgomery, as Chief of Police for the City of Cozad, was the final policymaker for the Cozad Police Department. As such, he had the authority to give work assignments within his department, to discipline his officers and to hire and fire officers.

10.      In or about August of 2020, and in response to complaints raised by other Cozad Police Department Officers, Defendant Montgomery demoted Defendant Peden from "Sergeant" to "Officer." Notwithstanding this demotion, however, Defendant Montgomery did not remove Defendant Peden from a patrol position. Defendant Montgomery also did not take away Defendant Peden's authority to act as a law enforcement officer. Nor did Defendant Montgomery meaningfully prevent Defendant Peden from abusing his law enforcement authority with the public. The effect of Defendant Montgomery's demotion was that Defendant Peden was no longer serving as a supervisor for other officers, but Defendant Montgomery still allowed

Defendant Peden to do whatever he was going to do, good or bad, with the people of Cozad.

11.     The Cozad City Council placed full trust in Defendant Montgomery's decision making, and did not interfere with Defendant Montgomery's August 2020 decision to demote Defendant Peden while allowing Defendant Peden to continue patrolling, interacting with the public, and using his law enforcement authority for better or worse.

12.     In or about March of 2021, and after Defendant Peden had already been sued for the inappropriate and abusive use of his taser by an individual named Hilario Valsquez, Defendant Peden used his taser against a suicidal subject who was, at that time, unarmed (as a citizen bystander had gotten the firearm away from the subject) and traumatized.

13.     Despite Defendant Peden's continuing record of reckless and abusive conduct toward the public and despite Defendant Peden's apparent unwillingness to change his ways after being demoted, Defendant Montgomery, as final policymaker for the Cozad Police Department, did not remove Defendant Peden from patrol duties. Defendant Montgomery also did not require Defendant Peden to undergo any *meaningful* retraining or *meaningful* consequences that would deter Defendant Peden from future abuses of his law enforcement authority.

14.     On or about March 18, 2022, Defendant Peden, Defendant Montgomery and the City participated in the mediation of a civil rights action arising out of Defendant Peden's inappropriate use in May 2020 of his taser against Hilario

4

Velasquez, followed by his arrest of Mr. Velasquez and handcuffing and citation in lieu of arrest of Mr. Velasquez' sister, Sarah Garrett; Defendant Peden also threatened to place Ms. Garrett's children in state custody. This March 2022 mediation resulted in the insurer for Defendant Peden and the City agreeing to pay $115,000.00.

15.     Even knowing that the City had now, as of March 18, 2022, agreed to pay $115,000 to settle a lawsuit because of his abusive conduct was not enough to deter Defendant Peden from further abuses of his law enforcement authority. Defendant Montgomery for his part did not use that occasion to retrain Defendant Peden.

16.      Nor did Defendant Montgomery use that occasion to establish policies and customs in the Cozad Police Department that the abuse of law enforcement authority will not be tolerated. Defendant Montgomery, as the final policymaker, should have used the occasion to train Defendant Peden and other officers that everyone, including government officials, must follow the law and that abuses of government power cost everyone. Apparently, however, he did not do so.

***Defendant Peden Violates Plaintiff Sandoval's Rights Just Weeks After a Settlement was Paid Due to his Abusive Conduct***

17.     In April of 2022, Plaintiff Sandoval had a clearly established right under the Fourth and Fourteenth Amendments to the United States Constitution to be secure in her home against unreasonable searches and seizes. These clearly established rights included the right to be free from arrest except upon probable cause

5

and the right to not have her residence entered and searched by law enforcement in the absence of a warrant or legally recognized exception to the warrant requirement.

18.   In or about April of 2022, Defendant Peden responded to a domestic disturbance at Sandoval's home. The father of Sandoval's baby had struck her, leaving visible marks on her. Defendant Peden spoke outside with the father of Defendant Sandoval's baby and subsequently arrested Sandoval without probable cause. Defendant Peden transported Sandoval to jail. Sandoval's assailant was never charged in relation to this incident.

19.   Sandoval was released from custody the next day without explanation or an apology. The Dawson County Attorney's Office did not file charges against Sandoval in relation to this incident.

20.    The day Sandoval was released from custody she arranged for a sitter to stay with her infant while she drove to Lexington to buy groceries. When Sandoval returned home, her sitter (who does not speak English) advised her that while Sandoval was gone, Defendant Peden came to Sandoval's home, entered without consent or a warrant and searched the home including opening closed doors without consent.

21.   These entries and interactions were recorded on Defendant Peden's body-worn video camera. Body-worn camera footage shows Defendant Peden enter the residence without confirming whether the person who opened the door was a renter, thus being able to consent to a search. The person who opened the door did not give verbal consent for Defendant Peden to enter the residence. Defendant Peden

6

proceeded to open multiple closed doors within the residence without consent. All of the aforementioned actions were in violation of Sandoval's rights against unreasonable searches in violation of the Fourth and Fourteenth Amendments.

22.   At the time that he did so, Defendant Peden did not have consent to enter the residence or the rooms with closed doors within the residence. Defendant Peden did not have a warrant to enter Sandoval's home nor did Defendant Peden have probable cause to request a warrant to enter Sandoval's home, so instead, he entered her home on his own volition.

23.   There was neither an emergency nor any exigent circumstances that would have justified Defendant Peden's warrantless entry into the residence.

24.   Defendant Peden was not performing a welfare check at the time he entered the residence.

25.   Defendant Peden was not in fresh pursuit of a fleeing felon at the time he entered the residence.

26.   No other legally recognized exception to the Fourth and Fourteenth Amendment's warrant requirement applied such that Defendant Peden was permitted to enter Sandoval's residence and then search its contents.

27.   Defendant Peden felt empowered to enter Sandoval's home without a warrant or legally justified basis for doing so because Defendant Montgomery, as final policymaker, had created an informal policy and custom at the Cozad Police Department whereby officers, to include Defendant Peden, could violate citizens' Fourth and Fourteenth Amendment rights without serious and meaningful

consequence. Defendant Montgomery, as final policymaker, had refused to retrain Defendant Peden, to remove Defendant Peden from duties where he had the ability to abuse his law enforcement authority or to fire Defendant Peden, in spite of repeated notice that Defendant Peden was a menace to the citizens of the city Defendant Montgomery was charged with serving and protecting.

28.   In or about May of 2022, Sandoval filed a lawsuit before this Court docketed as 4:22-CV-3074 generally alleging the same contained herein. It was not until after Sandoval made Defendant Peden's actions public that he was disciplined.

29.   After an internal investigation determined Defendant Peden violated Sandoval's Fourth Amendment rights, on or about June 22, 2022, Defendant Peden was disciplined for his conduct described by the Nebraska Commission on Law Enforcement and Criminal Justice Decertification Attestation Letter as "[w]ithout legal authority to do so, [Defendant Peden] entered a residence to conduct a search for a person he wanted to speak with." The residence referenced was Sandoval's residence.

## FIRST CAUSE OF ACTION -- DEFENDANT PEDEN

## FOURTH & FOURTEENTH AMENDMENTS UNDER 42 U.S.C. § 1983

30.   Plaintiff incorporates the foregoing paragraphs, as if fully set forth herein.

31.   At all times relevant to this Complaint, Defendant Peden was acting under color of law—under the constitutions, statutes, administrative rules, customs, policies and usages of the City of Cozad, the State of Nebraska and the United

States—and had assumed the responsibilities, activities, and rights involved in exercising their roles as members of the City of Cozad's professional staff.

32. The Fourth Amendment to the United States Constitution, made applicable to the State of Nebraska pursuant to the Fourteenth Amendment to the United States Constitution, guarantees individuals the right to be secure in their persons, houses, papers, and effects against unreasonable searches and seizures.

33. In April of 2022, when Defendant Peden intentionally caused Sandoval to be arrested, it was clearly established that a law enforcement officer violates the Fourth and Fourteenth Amendments' guarantees against unreasonable seizures when a law enforcement officer effectuates an arrest without probable cause.

34. In April of 2022, governing authority made the contours of this right sufficiently clear and apparent under the particularized circumstances alleged herein, such that Defendant Peden violated Sandoval's clearly established Fourth and Fourteenth Amendment rights when he arrested her without probable cause.

35. Additionally, in April of 2022, when Defendant Peden intentionally entered Sandoval's residence without a warrant or legally recognized basis to do so, it was clearly established that a law enforcement officer violates the Fourth and Fourteenth Amendments' guarantees against unreasonable searches when a law enforcement officer enters a residence and searches its contents in the absence of a warrant or some other legally recognized exception justifying warrantless entry.

36. In April of 2022, governing authority made the contours of this right sufficiently clear and apparent under the particularized circumstances alleged

9

herein, such that Defendant Peden violated Sandoval's clearly established Fourth and Fourteenth Amendment rights when he entered her residence and searched its contents without a warrant or a legally justifiable basis for doing so without a warrant.

37.    Under the circumstances alleged herein, and based upon the clearly established nature of the rights at issue, Defendant Peden is not entitled to qualified immunity on Sandoval's claims that she was subjected to an unreasonable search and unreasonable seizure in violation of her Fourth and Fourteenth Amendment rights.

38.    As a direct and proximate result of Defendant Peden's unconstitutional conduct, Sandoval suffered damages including, but not limited to, deprivation of her constitutional rights, loss of liberty, emotional distress, humiliation, invasion of privacy, and other injuries.

39.    Defendant Peden's willful and wanton conduct demonstrated a callous indifference to Sandoval's federally protected rights, entitling Plaintiff to an award of punitive damages.

## SECOND CAUSE OF ACTION

## DEFENDANT MONTGOMERY AND THE CITY OF COZAD

## UNDER 42 U.S.C. § 1983:

40.    Plaintiff incorporates the foregoing paragraphs, as if fully set forth herein.

41.    At all times relevant to this Complaint, the City of Cozad was a political subdivision organized under the laws of the State of Nebraska and responsible for policies, customs, practices, and supervision of its police department.

42.    At all times relevant to this Complaint, Defendant Montgomery, as the Chief of Police and final policymaker for the City of Cozad Police Department, was likewise responsible for policies, customs, practices, and supervision of the Cozad Police Department.

43.    At all times relevant to this Complaint, Defendant Montgomery acted under color of state law in the course and scope of his official duties.

44.    Prior to the incidents alleged in the First Cause of Action in this Complaint, Defendant Peden had been involved in prior incidences involving unconstitutional conduct toward other individuals.

45.    The City and Defendant Montgomery were aware, or reasonably should have been aware, of Defendant Peden's pattern of unconstitutional conduct based upon the matters alleged herein, including, but not limited to, a prior lawsuit against Defendant Peden.

46.    Despite this knowledge, Defendants failed to adequately investigate, discipline, supervise, or retrain Defendant Peden.

47.    At all times relevant to this Complaint, both the City and Defendant Montgomery were charged with the responsibility and duty to protect and serve the public by properly hiring, training and controlling officers under its command, including Peden. These duties include promulgation and enforcement of rules as well

11

as regulation and training regarding the use of arrest power and search and seizure authority.

48. As final policy maker, Defendant Montgomery, and the City, had duties to training its professional law enforcement staff to not arrest individuals without probable cause and to not enter and search the private property of citizens without their permission in the absence of a warrant or legally justified basis that would permit the warrantless entry and search of a residence.

49. Defendant Montgomery, as final policy maker, and the City, failed to promulgate adequate training, rules and regulations relating to the abuse of arrest powers, and further failed to instruct and train Defendant Peden in the appropriate methods for avoiding inappropriate and abusive use of law enforcement authority, including, but not limited to, arrest powers and search and seizure authority.

50. Defendant Montgomery, as final policy maker, and the City, established through tacit authorization or explicit instruction a policy or custom of allowing officers to commit abuses of law enforcement authority, including, but not limited to, arrest powers and search and seizure authority. That policy was enacted and enforced with deliberate indifference to the constitutional rights of persons effected thereby.

51. The City and Defendant Montgomery, as final policymaker, failed to properly train and control officers under its command, including Defendant Peden, and failed to ensure compliance with its training and regulations regarding arrest without probable cause; that failure has resulted in a policy or custom of inadequate training on abuse of law enforcement authority.

52.    The City and Defendant Montgomery, as final policymaker, failed to properly train and control officers under its command, including Defendant Peden, and failed to ensure compliance with its training and regulations regarding warrantless searches of private residences; that failure has resulted in a policy or custom of inadequate training on abuse of law enforcement authority.

53.    The City and Defendant Montgomery's custom of failing to properly train and control officers under its command, including Defendant Peden, and its failure to ensure compliance with its training and regulations on misuse of law enforcement authority, amounts to deliberate indifference to the rights of persons with whom City of Cozad officers come into contact, including the rights of Plaintiff.

54.    The City's custom and policy of allowing abuse of law enforcement authority, and the City and Defendant Montgomery's failure to properly train and control officers under its command, including Defendant Peden, was so reckless that Defendant Peden's misconduct was inevitable as of the date of the incident giving rise to this Complaint.

55.    The unconstitutional acts committed against Sandoval were the direct and foreseeable result of the Defendants' policies, customs, and failures to supervise and discipline Defendant Peden in particular.

56.    As a direct and proximate result of Defendants' actions and omissions, Sandoval suffered violations of rights guaranteed by the Fourth and Fourteenth Amendments to the United States Constitution and sustained damages including

13

deprivation of her constitutional rights, loss of liberty, emotional distress, humiliation, invasion of privacy, and other injuries.

## CLAIM FOR PUNITIVE DAMAGES

In addition to compensatory damages, nominal damages, and any other form of damages available by law, Plaintiff hereby makes a specific claim for punitive damages against Defendants in an amount to be proven at trial for the willful and wanton acts and omissions of Defendants, to include violation of Plaintiff's civil rights, as alleged herein. The acts and omissions of Defendants in this case were so gross and culpable in nature that they constitute reckless indifference and callous and wanton disregard for the law and for the lives and safety of others, including Sandoval. Defendants had just resolved another lawsuit over Peden's abuse of his law enforcement authority – they had every reason to know his behavior was out of control, and they did not restrain him (and he did not restrain himself). Defendants' actions should be punished, and an example should be made so that these actions and omissions are not repeated. Moreover, the recovery of punitive damages is permitted under the federal civil rights statutes for reckless and callous indifference to the federally protected rights of others, and is thus appropriate in this case. This instance of reckless and callous indifference to Sandoval's privacy and constitutional rights should be punished through the imposition of punitive damages so as to make an example of conduct that will not be tolerated.

14

# REQUEST FOR TRIAL

Plaintiff respectfully requests that this matter be tried to a jury in Lincoln, Nebraska.

WHEREFORE, Plaintiff prays for judgment against the Defendants and for damages based upon for her injuries and the violation of her civil rights, and other consequential damages flowing from the violations set forth herein, to include and in addition to the following:

    A. Compensatory damages in an amount to be proven at trial;

    B. Nominal damages;

    C. Punitive damages to punish and deter the reprehensible conduct alleged in this Complaint;

    D. Pre-judgment interest and post-judgment interest to the extent authorized by law;

    E. Reasonable attorney's fees pursuant to 42 USC § 1988;

    F. The costs of this action;

    G. Additional damages as are proven at trial; and

    H. Such other relief as this Court deems equitable and proper.

DATED March 16, 2026.


VERONICA SANDOVAL, Plaintiff,

By: */s/Stuart J. Dornan*
    STUART J. DORNAN, #18553
    Dornan, Howard, Breitkreutz,
    Dahlquist & Klein PC LLO
    1403 Farnam Street, Suite 232
    Omaha, NE 68102
    (402) 884-7044
    (402) 884-7045 fax
    stu@dltlawyers.com
    Attorney for Plaintiff

16