IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA

| | | |
|---|---|---|
| VERONICA SANDOVAL, | ) | CASE NO.   4:26-CV-3089 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | **BRIEF IN SUPPORT OF** |
| | ) | **DEFENDANT PEDEN'S** |
| JOHN PEDEN, in his individual and | ) | **PARTIAL MOTION TO DISMISS** |
| official capacities; MARK | ) | |
| MONTGOMERY, in his individual and | ) | |
| official capacities; and THE CITY OF | ) | |
| COZAD, a Nebraska Political | ) | |
| Subdivision, | ) | |
| | ) | |
| Defendant. | ) | |

COME NOW Defendant, John Peden, in his individual and official capacities, offers this Brief in support of his Partial Motion to Dismiss claims made against him by the Plaintiff, Veronica Sandoval.

## INTRODUCTION

Plaintiff Veronica Sandoval ("Ms. Sandoval") commenced this action against John Peden ("Officer Peden"), an officer in the City of Cozad's (the "City") police department, and the City itself for alleged violations of her Fourth Amendment rights. In or about April of 2022, Officer Peden responded to a "domestic disturbance" at Ms. Sandoval's residence between Ms. Sandoval and the father of her child ("John Doe"). (Filing No. 1 at ¶ 18). Officer Peden arrested Ms. Sandoval for third degree domestic abuse and child abuse under Nebraska law following his investigation. (*Id.*). Officer Peden based his decision on the fact Ms. Sandoval and John Doe had a history of domestic altercations in the presence of their baby, including the week prior to the arrest. Chief Montgomery also arrived at the scene and was in complete agreeance with Officer

Peden's plan of action, again because of Ms. Sandoval's known history of violence with John Doe while in the presence of their child.

Pursuant to 42 U.S.C. § 1983, Ms. Sandoval alleges claims against Officer Peden for violations of her rights against unreasonable arrest without probable cause and warrantless entry into her home in the days after the arrest. Officer Peden moves to dismiss Ms. Sandoval's claim against him for unlawful arrest because he comported with constitutional requirements for arrests under the Fourth Amendment and is nonetheless entitled to qualified immunity as a matter of law. For those reasons, the Complaint lacks sufficient factual matter to plausibly state a claim for unlawful arrest and must be dismissed.

## STANDARD OF REVIEW

A complaint must set forth a short and plain statement of the claim showing that the pleader is entitled to relief. Fed. R. Civ. P. 8(a)(2). This standard does not require detailed factual allegations, but it demands more than an unadorned accusation. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint need not contain detailed factual allegations, but must provide more than labels and conclusions; and a formulaic recitation of the elements of a cause of action will not suffice. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). For the purposes of a motion to dismiss a court must take all of the factual allegations in the complaint as true, but is not bound to accept as true a legal conclusion couched as a factual allegation. *Id*.

To survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a complaint must also contain sufficient factual matter, accepted as true, to state a claim for relief that is plausible on its face. *Iqbal*, 556 U.S. at 678. A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the

misconduct alleged. *Id*. Where the well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged—but has not shown—that the pleader is entitled to relief. *Id*. at 679. Determining whether a complaint states a plausible claim for relief will require the reviewing court to draw on its judicial experience and common sense. *Id*. The facts alleged must raise a reasonable expectation that discovery will reveal evidence to substantiate the necessary elements of the plaintiff's claim. *See Twombly*, 550 U.S. at 545. The court must assume the truth of the plaintiff's factual allegations, and a well-pleaded complaint may proceed, even if it strikes a savvy judge that actual proof of those facts is improbable, and that recovery is very remote and unlikely. *Id*. at 556.

A court may consider the complaint, matters of public record, orders, materials embraced by the complaint, and exhibits attached to the complaint in deciding a motion to dismiss under Rule 12(b)(6). *Porous Media Corp. v. Pall Corp.*, 186 F.3d 1077, 1079 (8th Cir. 1999). "Videos of an incident are necessarily embraced by the pleadings," *Ching v. City of Minneapolis*, 73 F.4th 617, 621 (8th Cir. 2023), and may be considered in deciding a motion to dismiss, *Waters v. Madson*, 921 F.3d 725, 731 n.2 (8th Cir. 2019). A court need not "adopt the plaintiff's version of the facts if they are 'blatantly contradict[ed]' by video evidence. *Waters*, 921 F.3d at 734 (quoting *Boude v. City of Raymore*, 855 F.3d 930, 933 (8th Cir. 2017)).

#### FACTUAL BACKGROUND

The facts embraced in Ms. Sandoval's Complaint by virtue of the existence of Officer Peden's body camera footage and public dispatch records, but conspicuously absent from her written allegations, are as follows:

1. Officer Peden's body camera footage begins with Officer Peden in Ms. Sandoval's residence; John Doe references a physical domestic dispute with Ms. Sandoval as Ms. Sandoval can be seen holding a small baby. (Ex. A at 0:00 (*Officer Peden Body Camera*)).

2. As John Doe is speaking, Ms. Sandoval interrupts Officer Peden's investigation and requiring Officer Peden to escort John Doe outside the residence to continue taking statements from John Doe. (Ex. A at 0:00–2:50).

3. Both Ms. Sandoval and John Doe express their wishes to press competing charges against each other. (Ex. A at 1:30).

4. While Officer Peden is taking John Doe's statements, John Doe expresses law enforcement is "tired of it" following history of domestic disputes between himself and Ms. Sandoval. (Ex. A at 3:55–5:00).

5. John Doe asserts he acted in "self-defense" against Ms. Sandoval, (Ex. A at 5:35–5:50); Officer Peden refrains from making a judgment on whether physical acts by John Doe were self-defense but expresses concerns about repeated domestic altercations while a baby is in the room and further Officer Peden clarifies that it was "reported that you were fighting" and the reported domestic dispute was "all done with a baby in the room" and he determined John Doe and Ms. Sandoval's arrests were necessary because "I as well as all the other officer who have been here numerous times with this . . . are done with it." (Ex. A at 5:50–6:20).

6. John Doe asserts he was the victim of the altercation, and the baby was not in harm's way. (Ex. A at 6:27–6:34).

7. Officer Peden explains to John Doe that he determined arrests are necessary because Ms. Sandoval alleges she was holding the baby during the altercation and that he will "err on the side of caution for the kid" because he was not present to witness the assault. (Ex. A at 6:38–6:50).

8. Officer Peden arrests John Doe and places him in the squad vehicle and reenter's Ms. Sandoval's residence to continue his investigation. (Ex. A at 9:10).

9. Ms. Sandoval's behavior becomes near-hysterical as she summarizes her version of events of the domestic dispute and its cause(s). (Ex. A at 10:04–11:29).

10. Officer Peden confers with the City's dispatch to determine if DHHS is available, (11:36), who then contacts a caseworker with a history of helping Ms. Sandoval and her child; Officer Peden makes a call to an unknown number and again expresses Ms. Sandoval and John Doe are "back at it again." (Ex. A at 14:02).

11. Officer Peden summarizes Ms. Sandoval and John Does's conflicting allegations and informs Ms. Sandoval they are both going to jail because it is child abuse for domestic dispute in front of minor, (Ex. A at 17:20–20:10); Ms. Sandoval vigorously denies harming her baby in any way and denies hitting John Doe but Officer Peden focuses on presence of baby and reiterates it is child abuse to continue fighting in front of child. (Ex. A at 20:00–21:00).

12. Officer Peden tells Ms. Sandoval she is going to jail for third degree domestic assault and child abuse. (Ex. A at 32:01–32:10).

13. Officer Peden explains to Ms. Sandoval his decision to arrest her by referring to a similar incident the week prior with different officers. (Ex. A at 38:20–38:56).

14. Ms. Sandoval denies John Doe's allegations, but Officer Peden reiterates "I'm not believing … You both told me your side of the story… He says you did, you say he fought with you." (approx. 39:00). Officer Peden reiterates his concern about the child's safety; despite the conflicting allegations between Ms. Sandoval and John Doe, Officer Peden collected enough testimony to determine the child's welfare was at risk. (Ex. A at 39:42).

15. Chief Montgomery arrives at the scene and begins speaking with Officer Peden; Chief Montgomery "completely agree[s]" with Officer Peden's decision to arrest Ms. Sandoval in light of conflicting testimony and history of domestic disputes between Ms. Sandoval and John Doe. (Ex. A at 47:45–48:30).

16. Chief Montgomery later reaffirms Officer Peden's decision to arrest Ms. Sandoval by saying "Good, I've got no problem with that", (Ex. A at 58:05–58:13); Chief Montgomery emphasizes "multiple calls" have been made regarding Ms. Sandoval's turbulent relationship with John Doe and that such altercations have occurred around their small baby. (Ex. A at 58:14–58:35).

17. Officer Peden returns to the residence to find Ms. Sandoval's DHHS caseworker is speaking with Ms. Sandoval: the caseworker warns Ms. Sandoval "this is the last opportunity for them" and that if law enforcement is dispatched again to resolve a domestic dispute DHHS "is advocating for a removal" of the child because "there is nothing he can do to defend himself." (Ex. A at 59:53–1:00:04).

18. Officer Peden handcuffs Ms. Sandoval and proceeds to help carry diapers and other childcare supplies downstairs and loads her into his squad car. (Ex. A at 1:12:10–1:14:00).

**LEGAL ARGUMENT**

Ms. Sandoval's Complaint fails to allege sufficient factual matter, even if accepted as true, to state a claim for unlawful arrest that is plausible on its face. No factual content contained in the four corners of the Complaint, when also considering the body camera footage (Ex. A) allows this Court to draw any inference that Peden is liable for violations of Ms. Sandoval's Fourth Amendment right to be free from unlawful arrest. To properly plead a § 1983 claim, "a plaintiff must allege that an official acting under the color of state law violated rights guaranteed either by the Constitution or by federal statute." *Kelly v. City of Omaha*, 813 F.3d 1070, 1075 (8th Cir., 2016).

I. **Officer Peden's warrantless arrest of Ms. Sandoval was made with probable cause or arguable probable cause because he relied on information received from other law officers and from an alleged victim and had no other indicia of unreliability of said information.**

    a. *Officer Peden had probable cause to arrest Ms. Sandoval for possible domestic assault and child endangerment under Nebraska law.*

Ms. Sandoval claims her arrest was unreasonable and thus made without probable cause, but she fails to explain *why* Officer Peden did not have probable cause or otherwise allege he was unreasonable in making the arrest. (*See* Filing No. 1 at ¶¶ 18-19, 33-34). She fails to allege sufficient factual matter for a plausible claim of unlawful arrest because she is simply unable to do so. Officer Peden's decisions were reasonable under the totality of the circumstances in light of Ms. Sandoval's history of domestic disputes with John Doe in the presence of her child, including the altercation that gives rise to the present lawsuit.

Page 7 of 16

A bedrock principle of Fourth Amendment jurisprudence provides "a warrantless arrest by a law officer is reasonable," and thus comports with the Constitution, "where there is probable cause to believe that a criminal offense has been or is being committed." *Just v. City of St. Louis, Missouri*, 7 F.4th 761, 767 (8th Cir. 2021) (internal quotation marks and citation omitted). "Because probable cause 'deals with probabilities and depends on the totality of the circumstances,' . . . it is 'a fluid concept' that is 'not readily, or even usefully, reduced to a neat set of legal rules,' . . . [and] 'requires only a probability or substantial chance of criminal activity, not an actual showing of such activity.'" *District of Columbia v. Wesby*, 583 U.S. 48, 57, 138 S. Ct. 577, 586, 199 L. Ed. 2d 453 (2018) (internal citations omitted, cleaned up). "Probable cause 'is not a high bar[,]'" for law officers to meet. *See Id*., (*quoting Kaley v. United States*, 571 U.S. 320, 338, 134 S. Ct. 1090, 1103, 188 L. Ed. 2d 46 (2014); *see also Gilmore v. City of Minneapolis*, 837 F.3d 827, 832 (8th Cir. 2016) ("A law enforcement officer has probable cause when the totality of the circumstances at the time of the arrest are sufficient to lead a reasonable person to believe that the defendant has committed or is committing an offense." (cleaned up)).

The Eighth Circuit Court of Appeals established that when "a person's alleged crime involves a victim, the victim's testimony can play a central role in supporting probable cause." *See Walz v. Randall*, 2 F.4th 1091, 1100 (8th Cir. 2021); *see also Kiser v. City of Huron*, 219 F.3d 814 (8th Cir. 2000) (cited in *Walz*, 2 F.4th at 1101, for the proposition that the Eighth Circuit "affirmed a grant of qualified immunity when an officer arrested someone '[b]ased solely' on 'a credible and unsolicited report from the alleged victim,' noting that although the report was 'admittedly one-sided,' it 'contained sufficient detail to suggest that the complainant spoke truthfully.'"). "We think that officers should generally be allowed to believe the

information that they receive from or through a dispatcher [. . .] and that that information alone can sometimes justify a detention." *See Chestnut v. Wallace*, 947 F.3d 1085, 1091 (8th Cir. 2020).

The Eighth Circuit's decision in *Just v. City of St. Louis* is instructive to this Court's consideration of Ms. Sandoval's unlawful arrest claim and demonstrates Officer Peden had probable cause to arrest her for domestic assault and child abuse. 7 F.4th 761 (8th Cir. 2021). The court summarized the facts surrounding Just's arrest as follows:

> Just's truck ran out of gas near a St. Louis gas station, and, leaving his truck unattended, Just walked to the gas station to retrieve gasoline. When he returned, he found John Doe in his truck, rifling through its console [. . .] Just called 911 and reported this incident [. . .] The Officers arrived approximately 30 to 45 minutes later. About the same time, a third party arrived, who called John Doe back to the scene. The third party and John Doe relayed their version of events to the Officers, explaining that John Doe thought Just's truck was his brothers' and that Just had chased him while brandishing a knife [. . .] Just denied having a knife or chasing John Doe.
>
> ***
>
> The Officers said that Just and John Doe could leave. John Doe left. Just requested the Officers' names, explaining that he was upset they did not arrest John Doe. As Just was taking Officer Kuykendall's name, Officer Kuykendall handcuffed Just and placed him in the squad car. The Officers then conducted a pat down search of Just, looking for the knife that he allegedly brandished. They did not find a knife on Just's person, and they did not search Just's truck. The Officers then asked John Doe to return to the scene and placed him in handcuffs, too. A St. Louis police sergeant arrived at the scene, and after some discussion, the Officers released Just and John Doe. No charges were lodged against either Just or John Doe.

*Id.* at 765. Just brought, *inter alia*, claims of unlawful arrest against the officers on the basis they did not have probable cause to handcuff him since John Doe's testimony was not credible. *Id.* at 767. The Eighth Circuit disagreed, finding John Doe and the third party's reports "were

sufficient to have provided probable cause to arrest Just for assault[,]" and thus justified the officers' decision in making a warrantless arrest. *See Id*. at 768.

When Officer Peden arrested Ms. Sandoval, he had probable cause to believe she committed a crime. In Nebraska, a person commits the offense of domestic assault in the third degree when she: intentionally and knowingly causes bodily injury to her intimate partner, threatens an intimate partner with imminent bodily injury, or threatens an intimate partner in a menacing manner. Neb. Rev. Stat. § 28-323(1)(a)-(c). Further, Nebraska criminalizes a person's conduct if she knowingly, intentionally, or negligently causes or permits a minor child to be placed in a situation that endangers his or her life or physical or mental health. Neb. Rev. Stat. § 28-707(1)(a).

The Complaint alleges: Officer Peden was dispatched to a "domestic disturbance" at Ms. Sandoval's residence, there was evidence of visible markings from said dispute on Ms. Sandoval's body, and Officer Peden interviewed John Doe, the other person involved in said dispute before arresting Ms. Sandoval. (Filing No. 1 at ¶ 18). The facts embraced but not explicitly mentioned in the Complaint, provided *supra* (Ex. A), further show Officer Peden was aware of a history of domestic disputes between Ms. Sandoval and John Doe, Officer Peden had sincere concern over Ms. Sandoval's child's safety due to her repeated physical altercations with John Doe in the presence of the child, and because Ms. Sandoval's demeanor troubled Officer Peden as he conducted his investigation. *See United States v. Cortez*, 449 U.S. 411, 418 (1981) ("[C]ommon sense conclusions about human behavior" undergird police belief in existence of probable cause and "the evidence thus collected must be seen and weighed not in terms of library analysis by scholars, but as understood by those versed in the field of law enforcement.").

Here, as in *Just*, Officer Peden responded to a scene following the alleged crime. Like the officers in *Just*, Officer Peden collected statements from the involved parties in the dispute, and the parties' version of events were contradictory. Although Officer Peden avoided siding with either Ms. Sandoval or John Doe, he ultimately arrested Ms. Sandoval due in part to her demeanor during his investigation, in which she was frequently interrupting his interview of John Doe and her otherwise troubling behavior around her child. The decision to arrest Ms. Sandoval mirrors the officers' decision in *Just* because the plaintiff was upset at their decision to let the other individual walk free. Since the Eighth Circuit found facts similar to those faced by Officer Peden alone are sufficient for finding probable cause, it follows this Court should also find Officer Peden had probable cause to arrest Ms. Sandoval. Officer Peden also arrested John Doe (Ex. A at 9:10).

Officer Peden had a reasonable basis to believe Ms. Sandoval intentionally and knowingly injured John Doe or threatened him in a menacing manner based on John Doe's statements and Ms. Sandoval's confused explanation of the altercation. Officer Peden's body camera footage is interspersed with explanations to Ms. Sandoval, John Doe, and Chief Montgomery that his judgment was based in part on the fact Ms. Sandoval had a history of domestic disputes with John Doe, including the week prior. Further, Ms. Sandoval conceded she knowingly, intentionally, and negligently permitted her minor child to be placed in a situation that endangers her child's physical or mental health as evidenced by statements made by Chief Montgomery and the DHHS caseworker.

Although Ms. Sandoval asserts the Dawson County Attorney's Office did not file charges against her following the arrest, (Filing No. 1 at ¶ 19), such facts do not enter this Court's

calculus in determining whether Officer Peden had probable cause. The fact that no formal charges were initiated against Ms. Sandoval does not retroactively diminish Officer Peden's reasonable belief at the time of the arrest. *See Hosea v. City of St. Paul*, 867 F.3d 949, 956 n.6 (8th Cir. 2017) ("Regardless of the ultimate offense charged, probable cause to arrest an individual exists if the facts known to the officer establish probable cause to arrest for any violation of the law.").

Paucity in the Complaint cannot form an aegis against the standards of Rule 12(b)(6). The bare allegations of the Complaint combined with Officer Peden's elucidative body camera footage show Officer Peden had probable cause to arrest Ms. Sandoval for third degree domestic abuse and child abuse. Since Ms. Sandoval has not, and cannot, allege sufficient factual matter to state a plausible claim for unlawful arrest, dismissal is appropriate.

> b. *Officer Peden is immunized against Ms. Sandoval's claim for unlawful arrest because he had arguable probable cause to effect a warrantless arrest under the circumstances.*

Even if the Court finds *arguendo* Officer Peden did not have actual probable cause to arrest Ms. Sandoval, he is nonetheless entitled to qualified immunity with respect to Ms. Sandoval's unlawful arrest claim. Even if mistaken, Officer Peden's belief that he had probable cause was objectively reasonable. As alleged, Officer Peden "responded to a domestic disturbance at Sandoval's home." (Filing No. 1 at ¶ 18). Officer Peden then spoke to "[t]he father of Sadoval's baby", whom she alleges struck her with enough force to leave visible marks on her body. (*Id*.). After speaking to the father of Sandoval's child, he arrested Sandoval. (*Id*.). Under those circumstances, it was reasonable for an individual in Officer Peden's position to draw the inference that he had probable cause to arrest Ms. Sandoval.

In a § 1983 action, a government official is "entitled to qualified immunity unless (1) the facts, viewed in the light most favorable to the plaintiff[], demonstrate the deprivation of a constitutional or statutory right; and (2) the right was clearly established at the time of the deprivation." *Aldridge v. City of St. Louis*, 75 F. 4th 895, 898 (8th Cir. 2023) (quoting *Bell v. Neukirch*, 979 F.3d 594, 602 (8th Cir. 2020)). A district court may address these prongs in any order, but may only deny qualified immunity if both questions are answered in the plaintiff's favor. *Watson v. Boyd*, 2 F.4th 1106, 1112 (8th Cir. 2021). Though the probable-cause standard allows room for reasonable mistakes by a reasonable person, the qualified-immunity standard protects all but the plainly incompetent or those who knowingly violate the law. *Greenman v. Jessen*, 787 F.3d 882, 888 (8th Cir. 2015) (quoting *Ulrich v. Pope County*, 715 F.3d 1054, 1059 (8th Cir.2013) (internal quotation marks omitted, cleaned up).

To be clearly established, "[t]he contours of the right must be sufficiently clear such that every 'reasonable official would have understood that what he is doing violates that right.'" *Jenkins v. Univ. of Minn.*, 838 F.3d 938, 944 (8th Cir. 2016) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 741, 131 S.Ct. 2074, 179 L.Ed.2d 1149 (2011)). In order for a right to be clearly established, there need not be "a case directly on point"; however, "existing precedent must have placed the statutory or constitutional question beyond debate." *al-Kidd*, 563 U.S. at 741, 131 S.Ct. 2074. "Failing to 'identify a case where an officer acting under similar circumstances . . . was held to have violated the Fourth Amendment' is often fatal to a claim outside of obvious cases." *Moore-Jones v. Quick*, 909 F.3d 983, 985 (8th Cir. 2018) (quoting *White v. Pauly*, 580 U.S. 73, 79, 137 S.Ct. 548, 196 L.Ed.2d 463 (2017)).

"A warrantless arrest is consistent with the Fourth Amendment if it is supported by probable cause, and an officer is entitled to qualified immunity if there is at lease arguable probable cause." *Ehlers v. City of Rapid City*, 846 F.3d 1002, 1008-09 (8th Cir. 2017) (internal quotations omitted). "Arguable probable cause exists even where an officer mistakenly arrests a suspect believing [the arrest] is based in probable cause if the mistake is objectively reasonable." *Id.* (internal quotations omitted) (quoting *Borgman v. Kedley*, 646 F.3d 518, 523 (8th Cir. 2011)); *Ulrich v. Pope Cnty.*, 715 F.3d 1054, 1059 (8th Cir. 2013) (citation and quotation marks omitted). "[T]he issue of arguable probable cause is properly part of the resolution of qualified immunity's second prong, the clearly established prong." *Brown v. City of St. Louis*, 40 F.4th 895, 901 (8th Cir. 2022) (citations omitted).

The Eighth Circuit held officers had arguable probable cause following a domestic disturbance with less certain facts than those relied on by Officer Peden. *See Hosea*, 867 F.3d at 956 ("Hosea argues that the officers lacked probable cause to arrest him because they did not know why Steines was crying when they entered the residence . . . [but] without knowing why Steines was crying, a reasonable officer on the scene could have concluded that she placed the 911 call and was crying because Hosea made her fearful of imminent bodily harm."); *see also Cotten v. Miller*, 74 F.4th 932, 934–35 (8th Cir. 2023) (officers had at least arguable probable cause to believe that domestic violence recently occurred in apartment even though officers heard nothing indicating that such violence was occurring, but instead heard children's voices that sounded playful, and apartment's residents denied any domestic violence; downstairs neighbor had made emergency call reporting possible domestic violence, neighbor told officers ten minutes later that she had heard screaming, screeching, and thuds coming from upstairs

apartment, and officers had no reliable information that anyone had departed upstairs apartment during short period between call and their arrival).

Officer Peden had arguable probable cause—and is entitled to qualified immunity—for Ms. Sandoval's unlawful arrest claim under this circuit's precedent. The facts as alleged and embraced by the Complaint demonstrate an objectively reasonable person in Officer Peden's position would have also arrested Ms. Sandoval because John Doe's testimony allowed Officer Peden to infer Ms. Sandoval committed third degree domestic abuse. Further, there was ample historical evidence of child abuse given that Ms. Sandoval, John Doe, Chief Montgomery, and the DHHS caseworker corroborated that domestic disputes occurred around the child. Since courts can find arguable probable cause exists to arrest suspects where a 911 caller was crying but did not explain why she was crying, *Hosea*, 867 F.3d at 956, or when both parties to a domestic dispute deny there was ever a dispute, *Cotten*, 74 F.4th at 934–35, it follows Officer Peden had arguable probable cause to arrest Ms. Sandoval.

Officer Peden is entitled to qualified immunity because the Complaint fails to state the deprivation of a right that was clearly established at the time of Ms. Sandoval's arrest. Eighth Circuit precedent demonstrates objectively reasonable officials would believe arresting Ms. Sandoval was appropriate under the circumstances. The ample precedent cited, *supra*, demonstrates that Ms. Sandoval will struggle to identify any "existing precedent . . . plac[ing] the statutory or constitutional question beyond debate." For those reasons, the Court should dismiss Ms. Sandoval's unlawful arrest claim with prejudice.

## CONCLUSION

Page 15 of  16

For the reasons stated above, Defendant John Peden, respectfully requests that this Court grant his Partial Motion to Dismiss with prejudice.

JOHN PEDEN, Defendant

By:   ***/s/ Justin P. Smith***
      Justin P. Smith, # 28283
      Matthew G. Dunning, # 20057
      Baylor Evnen Wolfe & Tannehill, LLP
      Union Bank Place
      1248 "O" Street, Suite 900
      Lincoln, NE 68508
      Telephone: (402) 475-1075
      Fax: (402) 475-9515
      Email: jsmith@baylorevnen.com
               mdunning@baylorevnen.com

## CERTIFICATE OF COMPLIANCE

I hereby certify that this Brief complies with NECivR 7.1(d)(1). It contains 4,679 words, including the caption, headings, footnotes, and quotations, as calculated by the word-count function of Microsoft Word 2016.

***/s/ Justin P. Smith***
Justin P. Smith, # 28283

## CERTIFICATE OF SERVICE

I hereby certify that on May 20, 2026, I electronically filed the foregoing Brief with the Clerk of the Court using the CM/ECF system, as well as by electronic mail to the following:

Stuart J. Dornan
Dornan, Howard, Breitkreutz, Dahlquist & Klein, PC LLO
stu@dltlawyers.com

Terrance O. Waite
Waite McWha Law Firm
twaite@northplattelaw.com

***/s/ Justin P. Smith***
Justin P. Smith, #28283

Page 16 of  16